The next case is Voice Tech v. Mycroft AI, 2023-1033. May it please the Court, there is one point that I would like to make in this appeal today and it has to do with the main reference that is cited by Mycroft, which is McConnell. In this reference, the user, once again, sets up a database. In this database, it's a little bit more detailed because the user says, if I say X, then I want Y to happen and I want to use a specific application in order for that to happen. It's the user deciding it's going to be this application. There's no audio command interface deciding what application is going to be selected in order to execute at least one or more processes in response to the command. And so McConnell does not disclose or teach the deciding element in any of the challenged claims and therefore all of the challenged claims are patentable because if McConnell doesn't show this deciding element, then their arguments fail completely. This is the pre-configured instructions idea again? Yes, Your Honor. Okay. I remember one argument in your briefing was challenging the construction of audio command interface. And then I saw that the red brief say that at least for this McConnell-based ground of unpatentability, which the board adopted, you never made an argument below or here that any preferred meaning of audio command interface would make a difference in terms of how to evaluate the McConnell-based ground of unpatentability. Is that right? I don't believe so, Your Honor. As I understand it below, you said there's a particular conception of audio command interface that needs to be understood and once you understand that, you'll know that the Balakrishnan ground of unpatentability is no good. Right. But I don't see below or here in the blue brief any similar kind of argument for this McConnell-based ground of unpatentability. I can't point to anything, Your Honor. I don't remember. So then I guess the next question is why is there even really an issue that's necessary for us to decide when it comes to claim construction for audio command interface under those circumstances? Well, I think because the argument is, by my thoughts, that the Interface Program 300 in McConnell is an audio command interface and if that argument's being made, then, well, it's kind of a subsidiary issue, I suppose, because on the deciding issue, if there's no deciding going on in McConnell, there's no point to even look. I mean, if the user's always making the decision in McConnell, there's no point to really look at whether the Interface Program 300 is an audio command interface. But I don't know what the court's going to rule. I don't know how its evaluation is going to proceed. So if the court goes beyond that, then there would be a situation where the audio command interface definition or construction would need to be evaluated to see if their argument is right that the Interface Program 300 meets that. Are you hanging your hat essentially on the deciding term in terms of your claim construction arguments? Is that fair to say? Yes, Your Honor. We do have some arguments on remembers. Remembers? Yes. Well, remembers and I think even the location data, because those are both subsidiary. If you make a decision, then those elements of location data and remembering are subsidiary to that decision because you're using location data or remembering to make the decision. But as I understood your brief, your arguments on appeal are restricted to these particular functional limitations and you don't make a separate argument that if audio command interface, the term, that structural term understood to have a very specific meaning, McConnell doesn't teach that kind of an audio command interface. I think that's correct, Your Honor. Okay. If there are no other questions, I'll reserve the rest of my time for Roberto. Is it okay, live? Live. Thank you, Judge Chief. Thank you, Judge Lurie. And may it please the Court. The Board's decision should be affirmed. There was no error in its claim constructions of the decides and remembers limitations and substantial evidence supports its findings that those limitations were disclosed in the McConnell reference. Likewise, substantial evidence supports the Board's finding that the combination of McConnell and Rose, the combination that wasn't challenged below by voice tech, renders obvious the location data limitations. And the construction of audio command interface was correct, but it's also not germane to this appeal because the Board's determination of unpatentability does not rest on that construction. And, in fact, I'll point the Court to page 26 of the joint appendix. That's the page of the Board's opinion where it notes that voice tech did not dispute McConnell's discloses on audio command interface. The first paragraph on page 26 is the limitation receiving audio data from the mobile device at the computer at an audio command interface. The last sentence of that paragraph is, Patent owner does not dispute that McConnell discloses this limitation. That includes the audio command interface. That was a correct statement when made by the Board, and voice tech has not challenged that on appeal. So, Judge Tend, to answer your question, that construction is not germane to this appeal because of the grounds that the Board refers to. If I could turn to the decide limitation that was discussed in the prior appeal as well. As you noted, Judge Tend, this term is not defined. It doesn't appear in the patent. It was introduced in a claim amendment in prosecution. I think perhaps the most important page of the record is page 1002. This is the response to an office action in which voice tech identified the written description support for that limitation among others. They pointed to two paragraphs, paragraph 39 and 43 of the application, and then also figures 1 through 4. Well, paragraphs 39 and 43 are explaining that flow chart where a command is decoded, voice data is decoded into a command, and the process for deciding in that flow chart is determine whether the command is an operating system command. If so, execute it. And if not, determine whether it's a native application command. And if so, execute it. As the Board noted, there is essentially no difference between that description of deciding in the 348 patent and one of the descriptions of deciding that's in the con, which is consulting a spreadsheet that maps commands to a particular operating system function or native application. So while there are many other types of deciding that might be encompassed within the meaning of that term, and while McConnell does disclose other methods of deciding, such as, for example, prompting the user to identify the proper application, the Board's instruction of deciding as including pre-configured instructions was certainly correct because it matches the description of the invention in the very portion of the specification that voice tech itself identified as the written description support. What column and line of the patent are those passages that they rely on? Paragraph 39 is column 8, line 42, through column 9, line 3. So it's the paragraph that bridges columns 8 and 9. I'll call it up in front of me. Okay, I see that. And paragraph 43 is the last paragraph in column 9. It begins at line 49 and extends to the end of that column. Those two paragraphs are describing figure 4, which appears on page 69 of the appendix. So to be a little more explicit, Judge Chen, in paragraph 39, the one that begins on column 8 and runs into column 9, it says, at step 412, it is determined whether the command is an operating system command. If it is determined that an operating system command has been received, the method then proceeds to 414, where the operating system command is executed. The following sentences give more description of how that determination is made. And the Board, at page 27, relied on one of those, in that it is described as using, among other things, a spreadsheet to find and view slash play a whole set of different things, including, for example, a video recording. So the Board made a fact finding that, in that paragraph, it's describing the use of a spreadsheet essentially as the command file that identifies for each command where it should be executed. Given the discussion that was had in the prior appeal between Judge Chen and the counsel regarding the forfeiture waiver argument, are you making a different argument on the merits at this point? I'm very happy to contend on the merits of this one. In our appeal, I think this may be true in the others as well, we are only arguing waiver for this audio command interface construction, which in any event is not germane and was correct. A note about the Polycom case, Judge Chen, I think you may be right that there's a distinction to draw between arguments that a party simply disagrees with the determination of the Board versus points or arguments that the Board overlooked and essentially would have wanted to know about. In rendering its final decision, you could draw a distinction there. And in any event, this of course only applies if a party makes the strategic choice to file a petition for rehearing at the Board rather than appealing directly to this Court. But all waiver is discretionary essentially at this Court. This Court can review an issue even if it is waived. We don't think the Court needs to review audio command interface because it simply didn't undergird any of the Board's determination of unpatentability. That's the only issue you've argued this way? I believe that's correct. As you're saying that, I'm beginning to doubt myself, but if I am incorrect, I don't believe we need to rest on waiver for any of our arguments, Judge Chen. If the Court has no further questions, I'll cede the balance of my time. Thank you, Mr. Adams. Mr. Adams, just a little time if you'd use it. Thank you, Your Honor. I would like to point out that in our briefing to this Court, we did contest that the combination of McConnell and Briefs or Rose, however you want to say it, did not disclose the location data limitation or did not disclose or teach the location data limitation. I did want to talk a little bit about the construction of decides as well. How do you contend Rose doesn't disclose that particular limitation since you brought that up? I'm sorry, Your Honor. You were just talking about the location data limitation. How do you contend that Rose or however you pronounce that reference doesn't disclose that? Well, Rose talks about location data, but in Rose you've got two situations where the location data is being considered. One is at the very end of the process in Rose where the data has already been generated. And so if the data has already been generated, then that location data is not being used to decide what application is going to be selected to generate the data because the location data is not being considered until the very end. There's a second situation in Rose talking about location data as a means to access the system as a whole, kind of like a password. So if the user is trying to access the system, then the system can look at the location to see if this is perhaps a safe location, a confidential location that would allow access to the system. But that is at the very beginning of just accessing the system. The system hasn't received any kind of command. So there's no disclosure or teaching that you would use location data as part of making a decision to select an application because Rose is just talking about after the data has been generated or accessing the system at the very beginning. Looking at the construction of the sides and looking at paragraphs 39 and 43 in the application, which has obviously corresponding sections in the issued patent, those two paragraphs are focused on figure four and a step 412 where there's a determination. This is the user requesting that, basically it's the audio command interface trying to determine, okay, is the user wanting or giving me an operating system command or a native application command? And in paragraph 39, it goes on to explain this is what happens if there is a operating system command and gives several different embodiments. These are all embodiments where, kind of like what we were talking about before in the other appeal, where how the audio command interface is reaching a decision. How is it selecting the application and it's giving different embodiments where, for example, in the first one where it says, in this exemplary embodiment, an operating system command can be used to generate audio and video output data, such as a command to play a movie file using a video player of the operating system or other suitable processes. And I think the word suitable obviously is similar to appropriate. It indicates that the audio command interface is making this decision and it's giving examples of how that can take place. And there are several other embodiments in there, but I don't see anywhere in here where it's talking about matching. It does say you can list available. There can be a command to list out the available operating system commands, but that's not necessarily matching. It's just the audio command interface reacting, responding to the command to list out all of the commands. The patent talks about matching at column four, lines 20 to 21. Yes, sir. Audio command interface 108 can include a file of available operating system commands that can be matched with voice data. Yes, Your Honor. There are discussions in this patent about matching as a possible embodiment, but not in the claims at issue. In the claims at issue, it's all talking about the size. And if the applicant had wanted to use the word matching, he easily could have because it's in the specification. But he chose to use the word the size and he chose to rely on these paragraphs 39 and 43 instead of simply just saying to the examiner, I'm using the word matching and it's rough specification, so there's plenty of support. So there is a reason behind this. And I'd also like to point out that this was a 10-year-long prosecution of this patent. It wasn't just glanced over. There were a lot of appeals, a lot of rejections, a lot of claim amendments. And I'll just leave it at that unless there are any other questions. This patent wasn't obviously patentable. It wasn't obviously patentable. It took a long time for them to get this through. Any further? Nothing else, Your Honor. Thank you both. Case is submitted. Thank you, Your Honor.